## WILLIAM BURKS v. COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 7—826.]

### Malice a Question for the Jury.

     In the trial of a murder case, while it is not improper for the court to charge the jury what malice aforethought is in the meaning of the law, it is the province of the jury to determine whether it has been proved to have existed at the time of the killing, and the court has no right to tell the jury what character of act denotes malice nor from what act its existence may be inferred.

**Instruction as to Self-defense.**

　　In the trial of a murder case when the evidence shows that the deceased was the aggressor, that his two brothers were present, one armed with a revolver, another a knife and the third a stone, and that the father of accused was trying to prevent a fight and had grappled with the deceased trying to prevent him from shooting the accused, the father in the meantime calling for help when accused fired the fatal shot, the accused is entitled to have the court charge the jury as to the law of self-defense, and the court's refusal to do so constitutes reversible error.

APPEAL FROM PIKE CIRCUIT COURT.

May 27, 1886.

OPINION BY JUDGE LEWIS:

The evidence in this case clearly shows that the deceased was the aggressor not only on the day he received the fatal shot, but the day before, when without any apparent excuse he tried to persuade or taunt his brother to assault appellant. It also appears that he repeatedly threatened to take the life of appellant and endeavored to induce others to aid him in doing so, while if appellant by word or act gave him any cause for the grudge he evidently had, the record does not show it.

On the day of the killing, which was Sunday, the deceased went to the place of religious worship with a large navy pistol in his hand, which he defiantly and shamelessly carried in to the house and laid down by his side during the services. The remark made by appellant when on their way home from church, when they arrived at the place of the difficulty of the day before, was not such as to call for the epithet which the deceased applied to him; much less did it afford excuse for the assault made upon appellant by a brother of the deceased, who, the evidence shows, without any provocation whatever struck appellant on the nose, drawing blood, with one hand while keeping the other hand in his pocket.

The evidence of the witnesses for the commonwealth as well as for the defense shows that when it became apparent from the language and the actions of the deceased, which were insulting and threatening, that there was about to be a difficulty, the father of appellant told him to go on home, and counseled as well as endeavored to preserve the peace. Though he, the father of appellant, seized

the deceased it was evidently with the purpose of trying to prevent him from using his pistol, which he was struggling to do, for no witness testifies that Nathan Burks, the father, endeavored to injure the deceased, or said or did anything indicating any other wish or purpose than to prevent a difficulty.

There is evidence showing that when his father told appellant to go on home he started home, and Will Johnson, a brother of the deceased, stepped in before him and assaulted him, and was encouraged by the deceased, who said to him, "Hurrah, Will Johnson, you are my man." It appears that while Nathan Burks, the father, was struggling with the deceased to prevent him from using his pistol, and, according to the testimony of some of the witnesses, while calling for help, appellant left the position where he was in front of Will Johnson and went to where his father and the deceased were on the ground and fired the shot which caused the death.

The evidence shows that at the time Nathan Johnson had a knife out, Will Johnson, who had already assaulted appellant, had a pistol, and Tandy Johnson, the third brother, had a rock in his hand. It seems to us that, having been assaulted by one brother of the deceased and still in danger from his pistol, as well as from the knife in the hand of another, a rock in the hand of still another, and hearing his father, who not in fault was in a struggle with the deceased, call for help, appellant may have believed and had reasonable grounds to believe the deceased was about to kill or inflict great bodily harm not only upon himself but upon his father, and he was therefore entitled to instruction No. 4 asked for by his counsel and refused by the court.

It is not improper to correctly tell the jury what malice aforethought is in the meaning of the law, but it is the province of the jury, and not the court, to determine whether it has been proved to exist at the time of the homicide. It is always a question of fact to be determined by the jury, and the court has no right to tell them what character of act denotes malice, nor from what act its existence may be inferred. Whether malice did or did not exist was for the jury alone to determine, and the court had no right to instruct them as to the logical process or mode of arriving at their conclusion. In that respect instruction No. 1 was improper.

Wherefore for the errors indicated the judgment is *reversed* for a new trial and further proceedings consistent with this opinion. *Auxier & Ferguson, Conley & York, for appellant.*